# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs October 4, 2016

## HOBBS PURNELL OIL COMPANY, INC. ET AL. v. THOMAS BUTLER ET AL.

**Appeal from the Circuit Court for Lawrence County**
**No. CC-2625-12      David L. Allen, Judge**

---

**No. M2016-00289-COA-R3-CV – Filed January 12, 2017**

---

This contract action was initiated by the plaintiff oil company, Hobbs Purnell Oil Company, Inc. ("Hobbs Purnell"), alleging that the defendants, Gedith Butler and Thomas Butler, individually and d/b/a GG's Market (collectively, "the Butlers"), breached their contract with Hobbs Purnell by failing to pay three invoices for fuel, which had been provided to the Butlers on a consignment basis. The Butlers filed a counterclaim against Hobbs Purnell and a third-party complaint against the president of the oil company, Tommy Porter. Prior to trial, the trial court granted Hobbs Purnell's motion in limine and excluded all invoices that were not listed in the Butlers' discovery response. At trial, the Butlers chose to proceed in the action *pro se* following the trial court's grant of their previous counsel's motion for withdrawal. During a bench trial, the trial court excluded the testimony of the Butlers' expert witness upon finding that they had failed to qualify him as an expert. Ultimately, the trial court entered a judgment in favor of Hobbs Purnell and against the Butlers in the amount of $46,135.93, which included $27,059.10 for the three unpaid invoices plus prejudgment interest in the amount of $19,076.83. The trial court dismissed the Butlers' counterclaim and third-party complaint. The Butlers thereafter filed two pleadings that were treated collectively by the trial court as a motion for new trial, alleging that the trial judge had violated the Code of Judicial Conduct. The trial court denied the motion for new trial. The Butlers have appealed. Discerning no reversible error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Thomas Butler, Collinwood, Tennessee, Pro Se.

Gedith Butler, Collinwood, Tennessee, Pro Se.

Alan C. Betz, Lawrenceburg, Tennessee, for the appellees, Hobbs Purnell Oil Company, Inc., and Tommy Porter.

## OPINION

### I. Factual and Procedural Background

In 2001, the Butlers and Hobbs Purnell entered into a written contract in which Hobbs Purnell agreed to provide fuel products for the Butlers to sell on a consignment basis. The Butlers were to receive $0.04 per gallon on fuel products sold at their market. On a weekly basis, Mr. Porter, in his capacity as then-president of Hobbs Purnell, would submit an invoice to the Butlers based on the amount of fuel sold at their market for that week.

It is undisputed that the Butlers never questioned the amount or calculation of any invoice until November 2011. In November 2011, the Butlers challenged Hobbs Purnell's billing practices, alleging that Hobbs Purnell had been overcharging them. Consequently, the Butlers did not pay three invoices from November 2011, which resulted in Hobbs Purnell initiating the current action. The three unpaid invoices were as follows:

| | |
|---|---|
| • November 15, 2011 | $9,359.97 |
| • November 22, 2011 | $9,107.41 |
| • November 29, 2011 | $8,591.63 |
| | $27,059.01 |

Hobbs Purnell initiated this action in Lawrence County General Sessions Court by causing a summons to be issued for the Butlers and filing an "Affidavit of Sworn Account" by Mr. Porter, who stated he was "in charge of keeping the books and records for [Hobbs Purnell]." The affidavit alleged that the Butlers owed Hobbs Purnell a total of $27,059.10.[1] The Butlers retained the law firm of Hale and Hale, PLC, as counsel, who filed a notice of appearance on January 11, 2012.

Subsequently, the Butlers filed an "Application for Removal of Action," requesting that the cause be transferred to the Lawrence County Circuit Court. In the application, the Butlers stated their intent to file a counterclaim against Hobbs Purnell,

---

[1] We note that the total of the three invoices equals $27,059.01, instead of the $27,059.10 claimed by Hobbs Purnell and ultimately awarded by the trial court. Neither party raised this nominal difference of $0.09 as an issue on appeal; therefore, we consider it waived by the parties.

seeking damages in excess of the jurisdictional limits of the general sessions court. Thereafter, the Butlers filed their "Answer, Counterclaim and Third-Party Complaint" in which the Butlers denied the averments in the civil summons and "Affidavit of Sworn Account." The Butlers also filed a counterclaim against Hobbs Purnell and a third-party complaint against Mr. Porter, alleging breach of contract, negligence, breach of the duties of good faith and fair dealing, negligent misrepresentation, and intentional and fraudulent misrepresentation.

Interrogatories and requests for production of documents were propounded to the Butlers on two occasions by Hobbs Purnell. The first set of interrogatories and request for production of documents was submitted in March 2012. The Butlers responded in May and June 2012. On August 9, 2012, Hobbs Purnell filed a "Motion to Compel and Alternatively to Serve Additional Set of Interrogatories," claiming that the Butlers' responses were "evasive and incomplete." Following a hearing, the trial court granted the motion on August 28, 2012, affording the Butlers forty-five days to respond to Hobbs Purnell's second set of interrogatories and request for production of documents.

The Butlers subsequently submitted a response and supplemental response to the second set of interogatories and request for production of documents. In response to a request to "itemize each invoice [they] contend contains an overcharge," the Butlers included several invoices listed in their supplemental response but stated: "The Butlers assert that there are many overcharges that occurred which are undocumented or have not yet been discovered." The Butlers then reserved the right to supplement their responses with additional information upon discovery.

On April 29, 2014, the Butlers' attorney filed a motion to withdraw as counsel of record. On June 3, 2014, the trial court granted the motion to withdraw and allowed the Butlers forty-five days to retain new counsel. The Butlers subsequently filed a motion to proceed *pro se* in this matter. At a hearing on that motion, the trial court ruled, *inter alia*, that the Butlers were allowed to proceed *pro se*; that the Butlers' demand for a jury trial was withdrawn; and that, upon motion, Hobbs Purnell was allowed to amend its complaint.

During depositions taken on September 24, 2014, the Butlers were asked to identify any additional invoices they contended were incorrect. The trial court subsequently granted the Butlers time to supplement their responses with those invoices. The Butlers did not supplement their responses with any additional invoices.

On November 20, 2015, Hobbs Purnell filed a motion in limine, requesting that the trial court enter an order restricting the Butlers' proof at trial to only the specific invoices itemized in the Butlers' supplemental response to the second set of

3

interrogatories and request for production of documents. The Butlers filed a "Motion to Deny [Hobbs Purnell's] Motion to Limine," claiming that "there were many invoices undocumented and too voluminous in nature to be propounded on The Court and in the answer to [Hobbs Purnell's] question" and asking the trial court to allow all invoices into evidence at trial "in the interest of justice and fair play."

The trial court conducted a bench trial on November 23, 2015, addressing the motion in limine first and ruling that the Butlers could only present as evidence those invoices listed in their discovery response to Hobbs Purnell. The court then heard evidence regarding Hobbs Purnell's amended complaint. Hobbs Purnell presented the sworn deposition testimony of the Butlers, which included their respective admissions that they had not paid the three unpaid invoices from Hobbs Purnell to the Butlers for fuel products. Hobbs Purnell then rested its case in chief. According to the statement of the evidence certified by the trial court, Ms. Butler also testified at trial and admitted that the Butlers had not paid the three invoices while stating that she believed Hobbs Purnell "owed them" due to the billing overcharges. Following Ms. Butler's testimony, Hobbs Purnell moved for a directed verdict, which was granted by the trial court.[2] With regard to Hobbs Purnell's claims, the trial court concluded that Hobbs Purnell was entitled to a judgment against the Butlers in the amount of $46,135.93, which included $27,059.10 for the three unpaid invoices and prejudgment interest in the amount of $19,076.83.

The trial court next heard evidence concerning the Butlers' counterclaim and third-party complaint. All invoices not included by the Butlers in their pre-trial discovery responses were excluded from evidence. Mr. Porter's son, Brian Porter, who worked periodically for Hobbs Purnell, was the first witness for the Butlers. Brian Porter testified that while working at Hobbs Purnell, he would prepare multiple invoices when there existed price changes during the week. He also stated that he was unaware of how his father prepared invoices. On cross-examination, Brian Porter indicated that he knew two of the invoices presented to be correct. According to Brian Porter, Hobbs Purnell would not have tried to "cheat" the Butlers.

The Butlers' accountant, Steve Newell, testified regarding a meeting with the Butlers, Mr. Porter, and Mr. Porter's wife, Joyce Porter. According to Mr. Newell, Mr.

---

[2] We note that directed verdicts are not available in bench trials but only in jury trials. *See Boelter v. Reagan*, No. M2010-01354-COA-R3-CV, 2011 WL 1886573, at *2 (Tenn. Ct. App. May 18, 2011) ("'[M]otions for directed verdicts have no place in bench trials . . . .'") (quoting *Burton v. Warren Farmers Co-op.*, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002). Neither party has raised this as an issue; therefore, we deem that issue as waived on appeal. *See* Tenn. R. App. P. 27(a)(7); *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 617 (Tenn. 2010) (determining an issue to be waived when the appellant failed to argue the issue or cite any legal authority in support of his position).

4

Porter acknowledged during the meeting that there was a possibility of incorrect billing and stated, "I may owe it. If I do, you prove it." Mr. Newell testified that Ms. Porter was also in the office when the statement was made. Ms. Porter explained that she was present at this meeting but denied that Mr. Porter made the above statement. Mr. Porter also denied making this statement during his testimony.

Thereafter, the Butlers called Mark Henry, a certified public accountant and forensic accountant, as a potential expert witness. We note that the Butlers have not filed a transcript of the trial proceedings but have filed a statement of the evidence, modified and certified by the trial court pursuant to Tennessee Rule of Appellate Procedure 24(c) and (e). According to the statement of the evidence and the judgment, the Butlers failed to qualify Mr. Henry as an expert in his field. Ergo, the trial court excluded his testimony.

Mr. Porter also testified regarding a discussion he had with Ms. Butler at the Butlers' market. According to Mr. Porter, he instructed Ms. Butler to gather her receipts so they could be matched with Hobbs Purnell's paperwork. Upon finding the receipts, she informed Mr. Porter that she was going to the bank to get him a check. Ms. Butler, however, did not return. Mr. Porter eventually called Ms. Butler, who informed him that she was not going to pay the outstanding invoices. Mr. Porter related that he subsequently removed the pump key and locked the fuel pumps to prevent the Butlers from dispensing any more of Hobbs Purnell's fuel.

According to Mr. Porter, if there were multiple price changes during the week, he typically would average the prices on the invoice. He indicated that the prices never changed more than $0.25 in one week and that "it all averaged out in the long run." Mr. Porter stated that the Butlers never questioned or complained about the billing prices until November 2011. He also stated that he had instructed the Butlers to check the invoices each week. Mr. Porter testified that he and Ms. Porter had carefully reviewed each invoice between 2006 and 2011, determining that the most the Butlers could have been overcharged was $1,800.00. He asserted that he did not believe the Butlers had been overcharged on any of the invoices from 2006 through 2011.

Following Mr. Porter's testimony, the Butlers rested their case. The Butlers did not testify on their own behalf regarding their counterclaim and third-party complaint. Hobbs Purnell then moved for a directed verdict on the counterclaim and third-party complaint, which the trial court granted, dismissing the Butlers' claims.[3] The trial court entered judgment accordingly on November 25, 2015.

---

[3] See footnote 2.

5

Following entry of the judgment, the Butlers filed an "Objection to Judgment" on December 2, 2015, wherein the Butlers claimed that "[j]ustice cannot be obtained through the ruling of the court" due to evidentiary and procedural defects at trial. The Butlers subsequently filed an "Affirmative Defense in Response to Judgment" on December 31, 2015, claiming that the trial judge, David L. Allen, "failed to comply with Rule 10, Canon 2, Rules 2.2-2.4 of Tenn, Code of [Judicial] Conduct" and "made a prejudice[d], biased, and unfair judgment in favor of the Porters." The Butlers claimed, *inter alia*, that the trial judge came into court without his robe on the morning of trial and spoke to Mr. Porter and Ms. Porter by their first names only. Based on the reasons set forth in this filing, the Butlers requested a new trial. The trial court thereby treated such filing as a motion for new trial.

According to the statement of the evidence, Judge Allen's memory of the morning in question was "admittedly somewhat vague." Judge Allen stated that he recalled entering the courtroom prior to trial and greeting Mr. and Ms. Porter and their counsel, but he did not recall greeting them by their first names. Judge Allen further recalls greeting the Butlers with at least a "good morning." According to the trial court's order denying a new trial, Judge Allen later informed the parties that he had no personal relationship with Mr. or Ms. Porter, did not socialize with the Porters, was not in any organizations with the Porters, and did not know the Porters. The trial court's order reflects that the Butlers acknowledged that they knew of no facts establishing any relationship between Judge Allen and the Porters. The trial court denied the Butlers' motion for new trial.

Hobbs Purnell subsequently filed a motion for discretionary costs in the amount of $2,426.50, which was granted by the trial court in an order entered on January 13, 2016. The Butlers timely appealed.

## II. Issues Presented

The Butlers present five issues for our review in the "Statement of the Issues Presented for Review" section of their brief, *see* Tenn. R. App. P. 27(4), which we have restated as follows:

1. Whether the trial court erred by granting Hobbs Purnell's motion in limine, which excluded invoices that the Butlers had not produced during pre-trial discovery.

2. Whether the trial court erred by excluding from evidence the testimony and report of the Butlers' expert witness, Mr. Henry.

3.    Whether the trial court erred by failing to assign fault to Hobbs Purnell when applying the comparative fault doctrine to the Butlers' claims.

4.    Whether the trial court erred by denying the Butlers' motion for new trial in which they requested that such retrial be conducted by a judge from another jurisdiction.

5.    Whether the trial court erred by submitting its own statement of the evidence without approval from the Butlers.

### III.  Standard of Review

We review a non-jury case *de novo* upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise.  *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).  We review questions of law, including those of statutory construction, *de novo* with no presumption of correctness.  *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006).  Questions of construction involving the Tennessee Rules of Civil Procedure are likewise reviewed *de novo* with no presumption of correctness.  *See Green v. Moore*, 101 S.W.3d 415, 418 (Tenn. 2003).  The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary.  *See Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

We review a trial court's denial of a motion for new trial under an abuse of discretion standard.  *Melton v. BNSF Ry. Co.*, 322 S.W.3d 174, 181 (Tenn. Ct. App. 2010).  We also review a trial court's decisions regarding the admission or exclusion of evidence under an abuse of discretion standard.  *Brown v. Crown Equip. Corp.,* 181 S.W.3d 268, 274 (Tenn. 2005).  Our Supreme Court has elucidated the following analysis regarding abuse of discretion:

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000).  A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999).  The abuse of discretion standard does not permit the appellate court to substitute

7

its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

Furthermore, with regard to *pro se* litigants, this Court has explained:

*Pro se* litigants who invoke the complex and sometimes technical procedures of the courts assume a very heavy burden. *Gray v. Stillman White Co.,* 522 A.2d 737, 741 (R. I. 1987). Conducting a trial with a *pro se* litigant who is unschooled in the intricacies of evidence and trial practice can be difficult. *Oko v. Rogers,* 125 Ill. App.3d 720, 81 Ill. Dec. 72, 75, 466 N.E.2d 658, 661 (1984). Nonetheless, trial courts are expected to appreciate and be understanding of the difficulties encountered by a party who is embarking into the maze of the judicial process with no experience or formal training.

*Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988). Parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," but we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

### IV. Deficiencies in the Butlers' Brief

As a threshold matter, Hobbs Purnell and Mr. Porter contend that the Butlers' principal brief should be disregarded and their appeal dismissed because the brief fails to meet the requirements provided in Tennessee Rule of Appellate Procedure 27 and Tennessee Court of Appeals Rule 6. Tennessee Rule of Appellate Procedure 27 states in pertinent part:

(a)  Brief of the Appellant. The brief of the appellant shall contain under appropriate headings and in the order here indicated:

    (1)  A table of contents, with references to the pages in the brief;

    (2)  A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;

    * * *

(4)     A statement of the issues presented for review;

(5)     A statement of the case, indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below;

(6)     A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;

(7)     An argument, which may be preceded by a summary of argument, setting forth:

> (A)     the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

> (B)     for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues) . . . .

(8)     A short conclusion, stating the precise relief sought.

Similarly, Tennessee Court of Appeals Rule 6 provides in pertinent part:

(a)     Written argument in regard to each issue on appeal shall contain:

(1)     A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.

(2)     A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.

(3) A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.

(4) A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.

(b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

We recognize that the Butlers are *pro se* litigants and respect their decision to proceed self-represented. The Butlers' appellate brief, however, contains numerous deficiencies with regard to the above-listed requirements. The Butlers' brief completely lacks a table of authorities. *See* Tenn. R. App. P. 27(a)(2). The Butlers' statement of the case and statement of facts included in their principal brief contain very few references to the record. *See* Tenn. R. App. P. 27. The argument section appears to introduce issues to be presented for review that were not included in the "Statement of the Issues Presented for Review" section while issues included in the "Statement of the Issues Presented for Review" section lack argument. In fact, the issues presented for review are not included in the argument section.

As this Court has previously explained with regard to deficiencies in an appellate brief:

> While a party who chooses to represent himself or herself is entitled to the fair and equal treatment of the courts, *Hodges v. Tenn. Att'y Gen.,* 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000) (citing *Paehler v. Union Planters Nat'l Bank, Inc.,* 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997)), "[p]ro se litigants are not . . . entitled to shift the burden of litigating their case to the courts." *Whitaker v. Whirlpool Corp.,* 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000) (citing *Dozier v. Ford Motor Co.,* 702 F.2d 1189, 1194-95 (D.C. Cir. 1983)). *Pro se* litigants must comply with the same substantive and procedural law to which represented parties must adhere. *Hodges,* 43 S.W.3d at 920-21.

10

\* \* \*

Our Courts have "routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as described by Rule 27(a)(7) constitutes a waiver of the issue[s] [raised]." *Bean v. Bean,* 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000). In *Bean,* we went on to hold that "an issue is waived where it is simply raised without any argument regarding its merits." *Id.* at 56; *see also Newcomb v. Kohler Co.,* 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (holding that the failure of a party to cite to any authority or to construct an argument regarding his or her position on appeal constitutes waiver of that issue). As we stated in *Newcomb,* a "skeletal argument that is really nothing more than an assertion will not properly preserve a claim." *Newcomb,* 222 S.W.3d at 400. It is not the function of this Court to verify unsupported allegations in a party's brief or to research and construct the party's argument. *Bean,* 40 S.W.3d at 56.

Despite the fact that [the appellant's] brief is woefully inadequate, there are times when this Court, in the discretion afforded it under Tenn. R. App. P. 2, may waive the briefing requirements to adjudicate the issues on their merits.

*Chiozza v. Chiozza*, 315 S.W.3d 482, 487-489 (Tenn. Ct. App. 2009).

In the case at bar, although the Butlers' brief fails to fully satisfy the requirements of Tennessee Rule of Appellate Procedure 27 and Tennessee Court of Appeals Rule 6, we determine that this is an appropriate case in which to exercise our discretion to waive the briefing requirements in order to adjudicate only those issues specifically identified by the Butlers as issues presented for review in their principal brief.[4] *See* Tenn. R. App. P. 2.

## V. Exclusion of Evidence

We note at the outset that "admissibility or exclusion of evidence rests within the sound discretion of the trial court which should be reversed only for abuse of that discretion." *Austin v. City of Memphis*, 684 S.W.2d 624, 634 (Tenn. Ct. App. 1984); *see*

---

[4] In the one-page argument section of their brief, the Butlers list several topics without providing this Court with information regarding how the trial court allegedly erred. These are not specified as issues presented for appeal in the "Statement of the Issues Presented for Review" section of the Butlers' brief. Therefore, we decline to address these issues and consider them as waived for purposes of appeal. *See* Tenn. R. App. P. 27(a)(7).

*also In re Estate of Greenamyre*, 219 S.W.3d 877, 886 (Tenn. Ct. App. 2005) ("[A] trial court will be found to have 'abused its discretion' only when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.") (internal citations omitted).

## A. Exclusion of Invoices

The Butlers contend that the trial court erred by granting the motion in limine excluding several invoices from being admitted as evidence. In its judgment, the trial court found in pertinent part:

> Prior to taking proof in the case, the Court heard argument on [Hobbs Purnell's] Motion in Limine to exclude any invoices from proof which had not been supplemented beyond the invoices which were pointed out in Butler's Collective Supplemental Response to [Hobbs Purnell's] Second Set of Interrogatories and Request for Production of Documents. After argument and due consideration, the Court finds that based on the proof from the deposition of Gedith Butler and the record as a whole that [Hobbs Purnell's] counsel attempted on numerous occasions to get the Butlers to supplement their answer and they refused. The Court finds that there had been a Motion to Compel where the Honorable Stella Hargrove, Circuit Judge, had directed that the [Butlers] provide specific invoices which contained overcharges. The Court finds that the Motion in Limine is granted and that only the invoices which had been previously disclosed in the Butler[s'] Collective Supplemental Response to [Hobbs Purnell's] Second Set of Interrogatories and Request for Production of Documents containing specific proof of overcharges would be allowed to be presented by the Butlers in their claim.

As this Court has previously explained regarding the exclusion of evidence due to a party's failure to comply with discovery:

> When matters have reached a point in a case where the trial judge considers the sanction of preclusion, however, it will usually be because the court has been unable to otherwise secure a party's compliance with the discovery rules. As this court stated in *Magness* [*v. Couser*, No. M2006-00872-COA-R3-CV, 2009 WL 204116 (Tenn. Ct. App. Jan. 24, 2008)], the purpose of such a sanction is to deter others and punish the party who has violated discovery rules. Although punitive by definition, sanctions do not

constitute an injustice to the complaining party on facts such as those presented in this case.

> The sanction in this case is admittedly harsh. But "harsh sanctions have been used with some frequency to address a party's failure to comply with discovery orders." *Howard v. Am. Indus. Serv., Inc.,* No. M2001-02711-COA-R3-CV, 2002 WL 31769115, at *2 (Tenn. Ct. App. M.S. filed December 11, 2002) (citing *American Steinwinter v. American Steinwinter, Inc.,* 964 S.W.2d 569 (Tenn. Ct . App. 1997)); *Yearwood, Johnson, Stanton & Crabtree v. Foxland,* 828 S.W.2d 412 (Tenn. Ct. App. 1991); *Potts v. Mayforth,* 59 S.W.3d 167 (Tenn. Ct. App. 2001). We hold that the trial court's decision to preclude Contractor's experts from testifying does not amount to an abuse of discretion.

*Walls v. Conner*, No. E2007-01917-COA-R3-CV, 2008 WL 4735311, at *7 (Tenn. Ct. App. Oct. 27, 2008).

In this case, the record reflects that Hobbs Purnell requested on multiple occasions that the Butlers produce all invoices within which the Butlers claimed they were overcharged for fuel products. The Butlers included in their response to discovery requests a list of several invoices that allegedly contained overcharges. The Butlers' response stated that there were "many overcharges that occurred which are undocumented or have not yet been discovered." Thereafter, Ms. Butler participated in depositions, during which she was again asked if there existed additional invoices that were not included in the discovery response. Ms. Butler replied that she had not discovered any additional invoices not previously provided to Hobbs Purnell. The Butlers did not supplement their discovery response prior to trial.

Due to the Butlers' failure to fully comply with discovery and provide the invoices to Hobbs Purnell prior to trial, the trial court excluded all invoices that were not provided in discovery. The trial court's decision to exclude the invoices not provided to Hobbs Purnell in discovery is a sanction available to trial courts when parties have failed to comply with discovery requests. *See Walls*, 2008 WL 4735311, at *7. We find no abuse of discretion in the trial court's decision to exclude the invoices not provided by the Butlers to Hobbs Purnell during discovery.

### B. Exclusion of Expert Witness Testimony

The trial court in its judgment found the following regarding its exclusion of the Butlers' proffered expert testimony:

13

The Butlers attempted to present expert testimony of Mark Henry, a certified public accountant, as part of their proof in this cause of action. After objection by counsel, the Court finds that the Butlers failed to properly qualify Mark Henry as an expert witness to where his testimony could be considered by the Court and sustains [Hobbs Purnell's] objection and therefore excludes any testimony of Mark Henry from consideration in this action.

* * *

The Court also finds that since the Mark Henry report was excluded from evidence, any invoices listed on Schedule 5 of the Henry report were not properly before the Court.

As our Supreme Court has explained regarding the admissibility of expert witness testimony:

Generally, questions pertaining to the qualifications, admissibility, relevancy, and competency of expert testimony are matters left to the trial court's discretion. *McDaniel [v. CSX Transp., Inc.],* 955 S.W.2d [257,] 263 [(Tenn. 1997)]. We may not overturn the trial court's ruling admitting or excluding expert testimony unless the trial court abused its discretion. *Id.* at 263-64. A trial court abuses its discretion if it applies an incorrect legal standard or reaches an illogical or unreasonable decision that causes an injustice to the complaining party. *State v. Stevens,* 78 S.W.3d 817, 832 (Tenn. 2002).

Tennessee Rules of Evidence 702 and 703 govern the admissibility of expert testimony in Tennessee. Rule 702 states that "[i]f scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Rule 703 provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court shall

> disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.
>
> The trial court, therefore, must determine that the expert testimony is reliable in that the evidence will substantially assist the trier of fact to determine a fact in issue and that the underlying facts and data appear to be trustworthy. In addition to these specific rules, evidence generally must be relevant to be admissible. *See* Tenn. R. Evid. 401, 402.

*Brown*, 181 S.W.3d at 273-74.

The record on appeal contains no transcript from which this Court can review the trial proceedings pertinent to this issue. The statement of the evidence approved by the trial court states as follows regarding the exclusion of the expert's testimony:

> The [Butlers] then called Mark Henry, a certified public accountant and forensic accountant, as a witness. Counsel for [Hobbs Purnell] addressed the Court as to Mark Henry's role and advised the Court that he had not stipulated to Mark Henry being an expert witness and would object to any testimony of Mark Henry that was attempted to be presented to the Court outside of the Rules of Evidence. The Court admonished Gedith Butler that in order for Henry's testimony to be considered by the Court that she would have to follow the Rules of Evidence. Henry was sworn as a witness and presented his curriculum vitae and list of cases in written form for review by the Court. [Hobbs Purnell's] counsel objected to the consideration of the curriculum vitae as being premature and that objection was sustained.
>
> Henry testified that he was contacted in January of 2012 by the [Butlers] and their attorneys Hale and Hale to review financial documentation differences in gas sales versus purchases in dealings between [the Butlers] and [Hobbs Purnell].
>
> Henry testified that in October 2012 he prepared a schedule to his report which was a summary of invoices from Hobbs Purnell for each year from 2004 through 2011 and a summary of the sales tax returns filed by the [Butlers].
>
> Counsel for [Hobbs Purnell] moved the Court to exclude the testimony of Mark Henry as the [Butlers] had failed to properly qualify Henry as an expert witness and had failed to follow the Rules of Evidence

15

to allow Mark Henry's testimony to be considered by the Court. The Court sustained the objection and Henry's report was not admitted into evidence and his testimony was excluded from consideration by the Court.

We have been provided no other information in the appellate record by which we can evaluate the Butlers' claim that Mr. Henry's testimony was improperly excluded. The Butlers made no offers of proof during trial and have not supplemented the record with Mr. Henry's curriculum vitae, report, or deposition testimony reflecting his credentials to determine whether Mr. Henry is an expert in the field in which the Butlers were seeking qualification.[5]

This Court addressed a similar issue in *Wells v. Illinois Cent. R. Co.*, No. W2010-01223-COA-R3-CV, 2011 WL 6777921 (Tenn. Ct. App. Dec. 22, 2011), in which this Court determined:

> "This Court's review is limited to the appellate record and it is incumbent upon the appellant to provide a record that is adequate." *Chiozza v. Chiozza,* 315 S.W.3d 482, 489 (Tenn. Ct. App. 2009) (*per. app. denied,* May 20, 2010) (citing *Jennings v. Sewell-Allen Piggly Wiggly,* 173 S.W.3d 710, 713 (Tenn. 2005)). The appellant has a duty to prepare an appellate record that conveys an accurate and complete account of the trial court proceedings regarding the issues that are the basis of the appeal. *Flack v. McKinney,* No. W2009-02671-COA-R3-CV, 2011 WL 2650675, at *2 (Tenn. Ct. App. July 6, 2011) (citing *In re M.L.D.,* 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005)). This Court's authority to review a trial court's decision is limited to issues for which it is provided an adequate appellate record. *Am. Gen. Fin. Servs., Inc. v. Goss,* No. E2010-01710-COA-R3-CV, 2011 WL 1326234, at * 2 (Tenn. Ct. App. Apr. 7, 2011) (citations omitted). "Absent the necessary relevant material in the record an appellate court cannot consider the merits of an issue." *Flack,* 2011 WL 2650675, at *3 (quoting *State v. Ballard,* 855 S.W.2d 557, 561 (Tenn. 1993)). The appellate court is precluded from addressing an issue on appeal when the appellate record does not include relevant documents. *Chiozza,* 315 S.W.3d at 492 (citation omitted). The failure of the appellant to ensure that documents necessary to consider a particular issue raised on appeal are included in the appellate record constitutes an effective waiver of the appellant's right to appeal that issue. *Id.*

---

[5] The record contains an excerpt consisting of three pages of Mr. Henry's deposition testimony. The testimony provided does not reference Mr. Henry's credentials.

16

Here, the transcript of the trial court's hearing on the motions *in limine* indicates that the trial judge carefully reviewed Dr. Kress's deposition testimony before deciding to exclude it from the evidence presented at trial. On appeal, this Court has not been provided the deposition testimony so carefully reviewed by the trial court, which is obviously essential to any meaningful review of the trial court's decision. Under the circumstances, we must deem this an effective waiver of this issue on appeal.

*Wells*, 2011 WL 6777921, at \*6.

In the case at bar, we are unable to determine from the record on appeal whether the trial court correctly excluded Mr. Henry's testimony. The statement of evidence indicates that the Butlers "had failed to properly qualify [Mr.] Henry as an expert witness and had failed to follow the Rules of Evidence to allow Mark Henry's testimony to be considered by the Court." No other supporting documentation or transcript of the proceedings is contained in the record. Inasmuch as the trial court's decision to exclude evidence is a discretionary one, not to be disturbed absent an abuse of that discretion, and the record is insufficient to allow us to review the trial court's decision, we deem this issue effectively waived.

## VI. Comparative Fault Doctrine

The Butlers argue that while the trial court ruled that the comparative fault doctrine was applicable, the court "did not asse[ss] any fault to [Hobbs Purnell and Tommy Porter]." In its judgment, the trial court found as follows regarding the comparative fault doctrine:

> The Court further finds that the doctrine of comparative fault would apply to the negligence portions of the Butlers' claim and since the Butlers failed to check the invoices when presented that their comparative fault <u>would outweigh any negligence</u> of Hobbs Purnell Oil Company, Inc. or Tommy Porter.

(Emphasis added.)

Under the modified comparative fault system adopted by Tennessee, a plaintiff may recover from a defendant on a claim of negligence "so long as the plaintiff's negligence remains less than the defendant's negligence." *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992). In the case at bar, the trial court specifically found that the Butlers' negligence outweighed any negligence by either Hobbs Purnell or Tommy

Porter, which would preclude any recovery by the Butlers due to negligence. Upon our careful review, we determine that the trial court made a proper and sufficient assessment of fault under the comparative fault doctrine.

## VII. Motion for New Trial

The Butlers sought a new trial based on their contention that Judge Allen was biased in favor of Mr. Porter and Hobbs Purnell. The Butlers argue that the trial judge greeted the Porters utilizing their first names on the day of trial, which led the Butlers to believe that the judge had a personal relationship with the Porters. Although the Butlers allege that the trial judge violated provisions of the Code of Judicial Conduct, they do not provide a citation to a specific canon or rule in their brief. The Butlers do refer to their "Affirmative Defense in Response to Judgment," contained within the record, in which they specifically cited to Supreme Court Rule 10, Canon 2, and Rules 2.2, 2.3, and 2.4 of the Tennessee Code of Judicial Conduct. The trial court treated this pleading and the Butlers' previously filed "Objection to Judgment" together as a motion for new trial pursuant to Tennessee Rule of Civil Procedure 59 and ultimately denied the Butlers' motion.[6]

Rule 59.02 provides that "[a] motion for new trial and all other motions permitted under this rule shall be filed and served within 30 days after judgment has been entered in accordance with Rule 58." Tenn. R. Civ. P. 59.02. Rule 59.04 further provides that "[a] motion to alter or amend a judgment shall be filed and served within thirty (30) days after the entry of the judgment." Tenn. R. Civ. P. 59.04. "The purpose of Tenn. R. Civ. P. 59 motions is to prevent unnecessary appeals by providing the trial courts with an opportunity to correct errors before a judgment becomes final." *Carbone v. Blaeser,* No. W2012-00670-COA-R3-CV, 2012 WL 5503862, at *2 (Tenn. Ct. App. Nov. 14, 2012) (quoting *Bradley v. McLeod,* 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998), *Bradley overruled on other grounds by Harris v. Chern,* 33 S.W.3d 741, 744 (Tenn. 2000)). We review a trial court's denial of a motion for new trial under an abuse of discretion standard. *Melton v. BNSF Ry. Co.*, 322 S.W.3d 174, 181 (Tenn. Ct. App. 2010).

As provided in Canon 2.2, "[a] judge shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially." Tenn. Sup. Ct. R. 10, Canon 2.2. Canon 2.3 further states that "[a] judge shall perform the duties of judicial office,

---

[6] By considering these pleadings collectively as a motion for new trial, the trial court in essence treated the "Affirmative Defense in Response to Judgment" as an amendment to the "Objection to Judgment." Neither party has addressed this as an issue on appeal; therefore, we will not disturb the trial court's determination in this regard. We note that the trial court retained jurisdiction to rule on the motion for new trial pursuant to Tennessee Rule of Civil Procedure 59 and Tennessee Rule of Appellate Procedure 4.

including administrative duties, without bias or prejudice." Tenn. Sup. Ct. R. 10, Canon 2.3. Additionally, Canon 2.4 provides:

(A)     A judge shall not be swayed by partisan interests, public clamor or fear of criticism.

(B)     A judge shall not permit family, social, political, financial, or other interests or relationships to influence the judge's judicial conduct or judgment.

(C)     A judge shall not convey or permit others to convey the impression that any person or organization is in a position to influence the judge.

Tenn. Sup. Ct. R. 10, Canon 2.4(A). "Adverse rulings and 'the mere fact that a witness takes offense at the court's assessment of the witness,' do not provide grounds for recusal . . . in light of the 'adversarial nature of litigation.'" *Watson v. City of Jackson*, 448 S.W.3d 919, 929 (Tenn. Ct. App. 2014) (quoting *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001)).

Following trial and entry of a judgment adverse to the Butlers, the Butlers presented for the first time the allegation that Judge Allen had violated the Code of Judicial Conduct. They alleged that the judgment in favor of Mr. Porter and Hobbs Purnell was "prejudice[d], biased, and unfair," because the court allowed a personal relationship with Mr. and Ms. Porter to influence its ruling. In denying the Butlers' motion for new trial, the trial court specifically found:

[T]he Court makes the following findings and rulings on the allegations of lack of impartiality and fairness.

1.     The Court finds no merit to the matters in #1 of the document alleging that the Court openly exhibited a personal relationship with Tommy Porter and Joyce Porter with a personal greeting using only the Porters' first names. The Court does not recall addressing the Porters by their first name as the Court did not know the Porters nor have a personal relationship with the Porters. Any greeting to the parties or persons in the courtroom was an attempt to be cordial and courteous to those persons.

19

2. The Court finds that the Court had control of the proceedings and did not follow attorney Alan Betz's lead in conducting courtroom procedure but handled the trial in a professional manner.

3. The Court finds that there were no personal unfounded or unprofessional comments toward the Butlers['] capabilities as pro se attorneys. The Court in addressing the Butlers was making the point that the Butlers had been previously represented by an attorney but if the Butlers were going to represent themselves they would be bound by the same rules and regulations as an attorney in conducting the lawsuit. There was no attempt by the Court to question the abilities of the Butlers in representing themselves, and the Court was cordial toward the Butlers during the trial.

4. The Court finds that the allegations of failure to distribute critical information or to not allow the Butlers['] objections on motions to be heard and their questions about rulings to be answered is unfounded. The Court finds that in conducting the trial, the Butlers were held to the rules of evidence and procedure and the Butlers failed to adequately qualify their expert witness to allow the expert witness testimony to be considered by the Court. The Court finds that the Butlers failed to meet the standards of the rules of evidence for expert testimony and failed to follow those rules. The Court finds that the Court was courteous on rulings on objections and did not let either party cut corners on admission of evidence on Court procedures.

5. The Court finds that it did not undermine the Butlers' credibility and capabilities as pro se attorneys. The Court finds that the Butlers did not ask for a continuance in order to get an attorney to represent them and the Court did nothing to undermine the Butlers' credibility or capabilities. The Court was courteous and professional to the Butlers[,] ruling on the contested matters at trial.

6. Concerning the allegation that Tommy Porter admitted to intentional wrongdoing and overcharging the Butlers a small amount in which the Court did not take into consideration and wholly dismissed, the Court finds that this testimony was taken into consideration in making the ruling on the case in chief and that the Butlers wholly failed to prove their case making this testimony immaterial at that point in the proceedings.

7.     The Butlers alleged that due to Judge Allen's personal acquaintance with the Porters and the well-known business status of the Porters that Judge Allen made a prejudiced, biased and unfair judgment in favor of the Porters. The Court questioned the Butlers specifically at the hearing on the motion, what knowledge the Butlers had of the Court's personal acquaintance with the Porters. The Butlers responded that they didn't know anything about the Court's relationship with the Porters, and based that unfounded allegation on the Court allegedly addressing the Porters by their first name in Court. The Court finds this allegation is without merit as the Court had no personal acquaintance with the Porters. The Butlers admitted at the hearing that they had no knowledge of a personal acquaintance between Judge Allen and the Porters and therefore the allegation was unfounded.

8.     The Court further gave the Butlers ample opportunity to raise any other issues, whether they were included in the written motions or not, for consideration of the Court prior to making a ruling on the Butlers' motions.

9.     The Court specifically finds that the Butlers' Motions should be denied.

In the absence of a transcript, we must rely only on the appellate record before us, including pleadings, orders, and the statement of the evidence, to determine whether the trial court exhibited partiality in favor of Mr. and Ms. Porter, as the Butlers have alleged. Moreover, we note that neither a transcript nor statement of the evidence was filed regarding the hearing on the motion for new trial. Having no transcript of the evidence presented or a statement of the evidence before us, we are compelled to assume that the trial court's findings of the aforementioned facts as set forth in the trial court's Order Denying Motion for New Trial, entered on January 13, 2016, were supported by the evidence presented at the motion hearing. *See Reid v. Reid*, 388 S.W.3d 292, 295 (Tenn. Ct. App. 2012) (concluding that "[w]ithout a complete record or sufficient statement of the evidence from which to determine whether the trial court acted appropriately," this Court was "compelled to assume that the Circuit Court's decision in favor of Landlord was supported by the evidence submitted at trial."); *see also Outdoor Mgmt., LLC v. Thomas*, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007) (concluding that there is a "conclusive presumption that there was sufficient evidence before the trial court to support its judgment" if no transcript or statement of the evidence is submitted). This Court has held that "the burden is . . . on the appellant to provide the Court with a

transcript of the evidence or a statement of the evidence. . . ." *Outdoor Mgmt, LLC*, 249 S.W.3d at 378.

According to the trial court's Order Denying Motion for New Trial, the Butlers acknowledged during the motion hearing that they had no knowledge of any personal relationship between Judge Allen and the Porters. Upon our careful and thorough review of the record, we discern no indication of bias or partiality expressed or implied by the trial court judge. *See, e.g., Watson*, 448 S.W.3d at 932-33 ("Although we are cognizant of the fact that the trial judge declined to grant any of [the appellant's] *pro se* post-trial motions, it is well-settled that '[a]dverse rulings by a trial judge . . . are not usually sufficient to establish bias.'") (quoting *Ingram v. Sohr*, No. M2012-00782-COA-R3-CV, 2013 WL 3968155, at *31 (Tenn. Ct. App. July 31, 2013)). Therefore, we affirm the trial court's denial of the Butlers' motion for new trial.

VIII. Motion for Recusal

Additionally, in their "Affirmative Defense in Response to Judgment," the Butlers requested a new trial "with the trier of fact being from another jurisdiction in the great State of Tennessee." Inasmuch as the Butlers requested a new judge to preside over their case, we review the trial court's denial of their request according to the requirements for a motion for recusal pursuant to Tennessee Supreme Court Rule 10B. Section 1.01 of Tennessee Supreme Court Rule 10B requires:

> Any party seeking disqualification, recusal, or a determination of constitutional or statutory incompetence of a judge of a court of record, or a judge acting as a court of record, shall do so by a timely filed written motion. <u>The motion shall be supported by an affidavit under oath or a declaration under penalty of perjury on personal knowledge and by other appropriate materials.</u> The motion shall state, with specificity, all factual and legal grounds supporting disqualification of the judge and <u>shall affirmatively state that it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.</u>

(Emphasis added.)

We determine that the Butlers have waived this issue because their pleading requesting a new judge does not comply with the requirements of Tennessee Supreme Court Rule 10B in two aspects. First, the Butlers have filed no affidavit supporting their motion to recuse as required by Tennessee Supreme Court Rule 10B, § 1.01. Second, the Butlers have not affirmatively stated within their pleading that their motion is "not being

22

presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." *See id.*

This Court recently addressed a similar failure to comply with Rule 10B in *Childress v. United Parcel Serv., Inc.*, No. W2016-00688-COA-T10B-CV, 2016 WL 3226316 (Tenn. Ct. App. June 3, 2016). This Court in *Childress* affirmed the trial court's denial of the appellants' motion for recusal upon determining that the appellants "did not provide the mandatory affidavit in support of their motion for recusal . . . ." *Childress*, 2016 WL 3226316, at *1. As this Court explained:

> The record provided by the Appellants' does not contain an affidavit as required by Section 1.01. The Tennessee Supreme Court has recognized that when the word "shall" is used in a statute or rule, it is ordinarily construed as being mandatory and not discretionary. *Gabel v. Lerma*, 812 S.W.2d 580 (Tenn. 1990); accord *Stubbs v. State*, 393 S.W.2d 150 (Tenn. 1965). In *Elliott v. Elliott*, No. E2012-02448-COA-10B-CV, 2012 WL 5990268 (Tenn. Ct. App. Nov. 30, 2012), this Court specifically held that "it is imperative that litigants file their petitions for recusal appeal in compliance with the mandatory requirements of Rule 10B in the first instance," and further stated that the Rule 10B "makes [the affidavit in support of the motion for recusal] mandatory." *Id*. at *3 (citing Tenn. Sup. Ct. R. 10B, § 1.01).

*Id*. Likewise, we conclude that this issue is waived on appeal. *See, e.g., Childress*, 2016 WL 3226316, at *2-3 ("We . . . conclude that the record is insufficient to determine the issues raised by the Appellants in this appeal.").

### IX. Statement of the Evidence

The Butlers also challenge the statement of the evidence adopted by the trial court. Because no verbatim transcript of the proceedings was available, the trial court adopted a statement of the evidence, pursuant to Tennessee Rule of Appellate Procedure 24. Both Hobbs Purnell and the Butlers submitted separate proposed statements of the evidence. However, the parties could not agree on the content of the statement of the evidence, leaving the trial court to resolve any differences. *See* Tenn. R. App. P. 24(c), (e). The court adopted the statement of the evidence provided by Hobbs Purnell but included therein certain additional facts added from the Butlers' statement of the evidence.[7]

Tennessee Rule of Appellate Procedure 24 provides in relevant part:

---

[7] The trial court did not adopt as findings the statements by the Butlers regarding bias and partiality of the trial judge but included them to provide clarity for the appellate court.

**(c)** **Statement of the Evidence When No Report, Recital, or Transcript Is Available.** If no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available, or if the trial court determines, in its discretion, that the cost to obtain the stenographic report in a civil case is beyond the financial means of the appellant or that the cost is more expensive than the matters at issue on appeal justify, and a statement of the evidence or proceedings is a reasonable alternative to a stenographic report, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal. The statement, certified by the appellant or the appellant's counsel as an accurate account of the proceedings, shall be filed with the clerk of the trial court within 60 days after filing the notice of appeal. Upon filing the statement, the appellant shall simultaneously serve notice of the filing on the appellee, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal. Proof of service shall be filed with the clerk of the trial court with the filing of the statement. If the appellee has objections to the statement as filed, the appellee shall file objections thereto with the clerk of the trial court within fifteen days after service of the declaration and notice of the filing of the statement. <u>Any differences regarding the statement shall be settled as set forth in subdivision (e) of this rule.</u>

\* \* \*

**(e)** **Correction or Modification of the Record.** If any matter properly includable is omitted from the record, is improperly included, or is misstated therein, the record may be corrected or modified to conform to the truth. <u>Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court. Absent extraordinary circumstances, the determination of the trial court is conclusive.</u> If necessary, the appellate or trial court may direct that a supplemental record be certified and transmitted.

(Emphasis added.)

24

This Court has often recognized that a trial judge presiding over the subject proceedings is in the best position to resolve any disputes regarding the statement of the evidence. *See Atrip v. Crilley*, 688 S.W.2d 451, 453 (Tenn. Ct. App. 1985). By approving a statement of the evidence, the trial judge certifies that such statement is "true, fair and for appellate purposes, complete." *See id.* Pursuant to Tennessee Rules of Appellate Procedure 24(c) and (e), the trial court's determination with regard to the record and statement of the evidence is conclusive "absent extraordinary circumstances." "Situations which may constitute such 'extraordinary circumstances' include the death of the trial judge or evidence of bias." *Williams v. Williams*, No. M2013-01910-COA-R3-CV, 2015 WL 412985, at *6 (Tenn. Ct. App. Jan. 30, 2015), *perm. app. denied* (Tenn. June 12, 2015) (citing *Atrip*, 688 S.W.2d at 453). The Butlers have failed to show that extraordinary circumstances exist in this matter. Having discerned no bias or partiality by the trial court judge, we determine that the trial court's statement of the evidence is conclusive for purposes of this appeal. *See* Tenn. R. App. P. 24.

## X. Conclusion

For the reasons stated above, we affirm the judgment of the trial court. This case is remanded to the trial court for enforcement of the judgment and collection of costs. Costs on appeal are taxed to the appellants, Thomas Butler and Gedith Butler.

_____
THOMAS R. FRIERSON, II, JUDGE